C. F. Smith Company v. Commissioner.
C. F. Smith Co. v. Commissioner
Docket No. 32973.
United States Tax Court
T.C. Memo 1954-86; 1954 Tax Ct. Memo LEXIS 157; 13 T.C.M. (CCH) 607; T.C.M. (RIA) 54191; June 30, 1954, Filed *157 1. Petitioner manufactured and sold shirts and leather goods. Its articles of incorporation recited that it was formed to "foster and promote Christian, religious, charitable and educational enterprises" and that it did not "contemplate pecuniary gain or profit to the members thereof and shall have no capital stock." The articles made no provision for the disposition of earnings or assets. The by-laws, which could be amended or repealed by the directors, provided that a substantial portion of each year's earnings would be retained by petitioner, and that in the event of petitioner's dissolution, the net assets would be distributed as contributions to specified organizations. Petitioner reported that in 1946 and 1947, it made charitable contributions to a large number of donees, but did not identify or describe the donees other than by listing their names. Held, on the facts, petitioner did not make any contributions in 1946 or 1947 to organizations exempt from taxation under section 101(6) of the Internal Revenue Code. Held, further, petitioner was not organized and operated exclusively for religious or charitable purposes, and was not exempt from taxation *158 under section 101(6) of the Code. 2. Held, on the facts, that premiums paid by petitioner on life insurance policies insuring the life of its president did not constitute compensation to the president for services rendered, and were not deductible by petitioner under section 23(a)(1)(A) of the Code as ordinary and necessary business expenses. 3. Held, on the facts, that petitioner acquired and commenced operating its shirt business no later than January 10, 1946, and that no part of the income reported in petitioner's return for 1946 was produced by the operations of its predecessor. 4. Held, on the facts, that Hollywood Sportogs, a corporation, acquired substantially all of petitioner's properties in exchange for Hollywood Sportogs stock, and that the transaction constituted an exchange within the meaning of section 112(b)(4) of the Code pursuant to a reorganization as defined in section 112(g)(1)(C). C. C. Legerton, Esq., and V. Robert Antablin, Esq., for the petitioner. George E. Constable, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax for the years 1947 and 1949, and he added to the tax for 1947 a 25 per cent penalty under section 291(a) of the Code as follows: Year
Deficiency
Sec. 291(a)
1947
$1,167.79
$291.95
1949
1,963.05
None
Although 1947 and 1949 are the only years before us, it is necessary to consider questions involving 1946 and 1948 because of an alleged net operating loss of $96,372.66 in 1948 which the petitioner wants to carryback under the provisions of sections 23(s) and 122 of the Code. Petitioner at first took the view that it was a nontaxable charitable corporation under section 101(6) *160 of the Code and elected not to file income tax returns for the years 1946, 1947, and 1948. However, it filed timely a return for 1949 and it belatedly filed returns for 1946, 1947, and 1948. A net operating loss was reported in the return for 1948. This loss was carried back to wipe out all income for 1946 and 1947, and the late returns for these two years reported no taxable income. 1. The chief question is whether petitioner comes within the scope of section 101(6) of the Code. If it is held that petitioner is not exempt from income tax under section 101(6), the following questions must be decided: 2. Whether premiums paid by petitioner in 1946, 1947, and 1948 on life insurance policies covering the life of its president were properly deductible as ordinary and necessary expenses of its business. 3. Whether petitioner transacted business prior to April 1, 1946, or whether such business was conducted by its predecessor. 4. Whether the transaction by which petitioner disposed of its assets constituted an exchange within the meaning of section 112(b)(4) of the Code, pursuant to a reorganization as defined in section 112 (g)(1)(C). Findings of Fact The petitioner is a corporation *161 organized under the laws of the State of California, with its principal place of business in Los Angeles, California. Petitioner's accounting records were maintained for calendar years on an accrual basis. For several years the petitioner believed it was a charitable or religious corporation exempt from income tax under the provisions of section 101(6) of the Internal Revenue Code, and did not file Federal income tax returns. Belatedly and untimely, on June 29, 1949, it filed returns for 1946, 1947, and 1948. Petitioner's return for 1949 was timely filed. The returns were filed with the collector for the sixth district of California. Issue I - Status of Petitioner Under Section 101(6) Petitioner is a corporation organized by Clifford F. Smith. Its Articles of Incorporation were filed in the office of the Secretary of State of the State of California on January 10, 1946. They were signed by Clifford F. Smith, Beryl D. Smith, and Marjorie Harding, on December 27, 1945. Prior to 1946, Smith operated a sole proprietorship under the name of C. F. Smith Co., or C. F. Smith Company. The proprietorship manufactured and sold shirts. Smith was devoted to the *162 principles of evangelism and was active in and a substantial contributor to organizations and activities which embodied these principles. The petitioner was organized as the successor to the sole proprietorship. Smith and his wife, Beryl D. Smith, conveyed the proprietorship assets to petitioner. Petitioner's Articles of Incorporation provide that one of the purposes for which it was formed was to "foster and promote Christian, religious, charitable and educational enterprises." Article IV of the Articles contains a sixparagraph statement of religious beliefs, and belief in this "doctrinal statement" is asserted to be the foundation upon which petitioner is based. Eligibility to serve as a director of the petitioner was conditioned upon the filing at specified times of a statement subscribing to the religious tenets adopted in the Articles. Article II further provides that the petitioner "does not contemplate pecuniary gain or profit to the members thereof and shall have no capital stock." Petitioner issued no stock and had no "members" other than its directors. Petitioner's Articles of Incorporation provide that Smith and his wife, Beryl D. Smith, are to be directors with *163 life tenure. All other directors are given two-year terms. Smith was also petitioner's president, with a salary of $1,000 per month, or 10 per cent of petitioner's net earnings, whichever is greater. The other two director-officers were J. Grady Parrott, treasurer, and Marjorie Harding, secretary. Parrott worked in petitioner's office as an accountant and Harding was Smith's secretary. Their salaries were $100 per week and $75 per week, respectively. The Articles of Incorporation contain no provision for the disposition of earnings or assets other than stating that petitioner was formed to foster and promote charitable enterprises and that pecuniary gain or profit to the members was not contemplated. The by-laws, however, which could be amended or repealed by the directors, contain the following provision relating to earnings: "It is hereby declared to be the policy of this corporation, in accordance with its non-profit character, that insofar as possible this corporation shall distribute for the general purposes set out in its Articles of Incorporation no portion of the original assets contributed to this corporation by Clifford F. Smith and beryl [Beryl] D. Smith, his wife, *164 nor any portion of any other assets which may hereafter be contributed to this corporation by any donor, but on the contrary the corporation shall make expenditures for the purposes set out in the Articles of Incorporation only from the net earnings of the commercial business operations the corporation; and that for the purposes of building and expanding the corporation's business enterprises (all for the furtherance of the purposes set out in the Articles of Incorporation) in each calendar year a substantial portion of that year's net earnings shall be retained to increase the assets of this corporation." Originally, no provision was made for the disposition of petitioner's assets. On May 20, 1947, however, the directors adopted a resolution which provided that in the event of a dissolution of the corporation, the net assets should be distributed equally, as contributions, to eight specified organizations. On May 16, 1946, petitioner acquired the assets of an unincorporated leather goods manufacturing business theretofore owned and operated by E. F. Hillegas. These assets were used for the manufacture and sale of leather goods to the public. Petitioner's gross receipts in 1946 *165 and 1947 from the manufacture and sale of shirts and leather goods amounted to $573,872.06 and $320,066.30, respectively, and its income before deduction for net operating loss carry-back was $87,478.82 and $7,397.45. In petitioner's returns for 1946 and 1947, it was reported that the corporation had made charitable contributions of $14,752.36 and $7,567.38, respectively. However, deductions were not taken for such contributions, inasmuch as the corporation claimed net operating loss carry-backs. Petitioner's tax return and ledger accounts for 1946 list the following as recipients of charitable contributions in 1946: "Gospel Foundation"; "Words of Life, Inc."; "Evangelical Release time"; "Christian Business Mens Committee of L.A."; "National Assoc. of Evangelicals"; "Church of the Open Door L.A." "International Evangelistic Ass'n. Inc."; "Pacific Rural Mission"; "Child Evangelism Fellowship"; "Missionary Aviation Fellowship"; "Bible Crusaders"; "Christian Business Mens Committee, Glendale"; "Christ for America"; "Saturday Nite Jubilee"; "Miscellaneous Religious & Charitable"; "Max Zimmerman"; "Don Rood-Travel Exp."; "Western Air Lines-Winona Lake"; "Homer Britton"; "Dr. H.J.A."; "C. *166 O.D. - purch of organ D. Hillis"; "Calif. Hotel-Contribution to Mrs. Appellman"; "So. Pacific Ry. - Ticket for Sarah Jepson"; and "To Elizabeth White - For Sanitarium Expenses Allen Dean." A schedule accompanying the return for 1947 lists the following donees: "American Tract Society"; "Child Evangelism Fellowship, Inc."; "Church of the Open Door, L.A."; "Church press-Donation"; "Christian Business Mens Committee, Glendale" and "L.A."; "Gospel Foundation"; "International Evangelistic Assoc. Inc."; "Lincoln Heights Evangelistic Assoc."; "Methodist Challenge"; "Rev. Lawrence D. Powell"; "Sand business Exchange"; "Union Rescue Mission Inc"; "Rev. Norman Vernon"; "Youth for Christ"; and "Manufactured goods given to various religious workers." In 1946 and 1947, petitioner did not make any contributions to organizations exempt from taxation under section 101(6) of the Internal Revenue Code. The distribution of any of petitioner's earnings or assets to charitable organizations was a matter within the discretion of petitioner's directors. Charitable organizations obtained no indefeasible interests in petitioner's earnings or assets, and there was no reasonable certainty *167 that any earnings or assets would be distributed to charitable organizations in the future. Petitioner did not operate or conduct any religious or charitable enterprises, and was not organized and operated exclusively for religious, charitable, scientific, literary or educational purposes. Issue II - Deductibility of Premiums on Policies Insuring Life of Petitioner's President At some time not disclosed by the record, six policies upon the life of C. F. Smith, petitioner's president, were issued by three insurance companies in the total face amount of $60,000, as follows: Metropolitan Life Insurance Company issued one policy in the face amount of $25,000; another policy for $15,000; and a third policy for $5,000. Bankers National Insurance Company issued two policies in the face amount of $5,000 each. London Guaranty and Accident Insurance Company issued one policy for $5,000. At the first meeting of petitioner's board of directors, on July 25, 1946, a resolution was adopted authorizing the payment of the premiums on each of the above-described insurance policies, which were then in effect. It was stated in the resolution that the premiums were to be paid by the corporation *168 as "an expense of the business operations of this corporation." It was also stated in the resolution that "* * * the reason therefore being the fact that it is hereby recognized and declared that the perpetuation of the earning power of this corporation is dependent upon the continuance of the life of the said Clifford F. Smith and that the contributions of him and his wife form the principal basis of the earning power of this corporation." Pursuant to the above regulation, the petitioner paid premiums on the abovedescribed life insurance policies in 1946, 1947, and 1948, in the total amounts of $1,194, $2,238.80, and $3,575.73, respectively. In its returns for each of the years 1946, 1947, and 1948, the amounts of the insurance premium payments were deducted as insurance expense. The payments were not deducted as either officer's compensation or salary expense. C. F. Smith did not include the amounts of the payments for insurance premiums in his returns for any of the above years as part of his earnings or in any other way. The directors of the petitioner at no time authorized or designated the amounts of insurance premiums (whatever the amounts might be) as compensation for *169 the services to petitioner of C. F. Smith. All that the resolutions of the directors of the petitioner show with respect to the compensation to be paid to C. F. Smith for his services is that his salary, beginning January 1, 1946, would be either $1,000 per month or 10 per cent of the net earnings of petitioner, whichever might be greater. The resolution authorizing the above compensation of C. F. Smith, as president, was adopted at the same meeting as the resolution which authorized the payment of life insurance premiums by petitioner, and neither of the resolutions which were adopted at the meeting of the directors in July of 1946 stated, in any way, that the payments of the insurance premiums would constitute part of the compensation to be paid C. F. Smith for his services to the petitioner. The payments of insurance premiums by petitioner were neither authorized nor intended to be compensation to Smith for services rendered, and they did not constitute compensation for Smith's services. The payments of the insurance premiums in 1946, 1947, and 1948 did not constitute ordinary and necessary business expenses paid or incurred in carrying on petitioner's business in any of those *170 years. Issue III - Beginning Date of Petitioner's First Accounting Period The first meeting of petitioner's incorporators was held on July 25, 1946. At the first meeting of petitioner's Board of Directors, which also was held on July 25, 1946, the following occurred and was recorded in the minutes of the meeting: "Mr. Smith presented and read to the Board the Articles of Incorporation of this corporation and stated that they had been filed in the office of the Secretary of State at Sacramento, California, on January 10, 1946. He further stated that between January 1st and January 10th, 1946, the business which prior to January 1st, 1946, had been conducted and operated under the name of C. F. Smith Co., an unincorporated business belonging to Clifford F. Smith personally, was in anticipation of the completion of the proceedings of the organization of this corporation, operated for this corporation and, that from and after the 10th of January, 1946, the said business had actually been owned and operated by this corporation, to which all said assets had been theretofore under date of December 31, 1945, transferred. He further stated that in the above mentioned interim period from *171 January 1st to January 10th those persons who are named in the Articles of Incorporation as the officers had conducted the said business for the benefit of this corporation and had acted as such officers, in anticipation of the receipt of its Charter subsequently dated January 10, 1946. Mr. Smith also then presented to the Board an assignment and Bill of Sale executed by himself and his wife, Beryl D. Smith, under date of December 31, 1945, which is filed with these minutes, transferring to this corporation all the physical assets therein listed and innumerated, being particularly the assets and equipment of his garment manufacturing business, and stated that for the purpose of establishing this nonprofit corporation he and his wife had made said transfer and had subsequently transferred Lots 3 and 4 of the Eulalia Tract in Glendale, California, to this corporation without consideration and without hope of monetary reward or compensation in any form or manner whatsoever - all in order to accomplish the purposes set out in the Articles of Incorporation of this corporation." Upon motion of Miss Harding, duly seconded and unanimously carried the following resolution was adopted: *172 "RESOLVED: That there be and hereby are approved as the acts of this corporation all acts and things done and performed by Clifford F. Smith and Beryl D. Smith and Marjorie Harding, the Directors, and by Clifford F. Smith and Marjorie Harding, the President and Secretary respectively of the de facto corporation organized on the 27th day of December, 1945, under the name of C. F. Smith Co., whose Charter was thereafter received from the Secretary of State at Sacramento, California following filing thereof in the office of the Secretary of State on January 10, 1946; and that all such acts be and are hereby confirmed as the acts of this corporation." * * The petitioner's ledger contains entries recording transactions on January 1, 1946, and on other dates during the first three months of 1946. Petitioner's return for 1946 lists January 1, 1946 as the date of petitioner's incorporation. The depreciation schedule accompanying the return reports that certain office furniture and equipment, factory equipment and delivery equipment were acquired on January 1, 1946, and contains the following notation: "Acquired from predecessor Company, C. F. Smith Co., a sole proprietorship; cost *173 shown is that of predecessor." Depreciation was computed and deducted for the entire twelve months of 1946, and no proration for a period of less than twelve months was made for any other item appearing on the return. Petitioner acquired and commenced operating the shirt business not later than January 10, 1946. No part of the income reported in petitioner's return for 1946 was produced by the operations of its predecessor. Issue IV - Applicability of Section 112(g)(1)(C) to the Disposition of Petitioner's Assets Hollywood Sportogs, a corporation, (hereinafter referred to as Sportogs) was organized in 1948 under the laws of California. Its charter authorized the issuance of one class of stock having voting rights and a par value of one dollar a share. In September 1949, the directors and stockholders of petitioner and of Sportogs approved a plan of reorganization under which all of the assets of petitioner were to be exchanged solely for stock of Sportogs. On January 10, 1950, petitioner conveyed all of its assets (including a certificate for 58,000 shares of stock of Sportogs) to Sportogs for 109,680 shares of voting stock of Sportogs. After the transfer of its assets, *174 petitioner's only asset was stock of Sportogs. The exchange of all of petitioner's assets for voting stock of Sportogs constituted an exchange within the meaning of section 112(b)(4) of the Code pursuant to a reorganization within the provisions of section 112(g)(1)(C). Opinion Issue I - Status of Petitioner Under Section 101(6)
In order to come within the provisions of section 101(6), petitioner must establish that it was "organized and operated exclusively for religious, charitable, scientific, literary or educational purposes." Petitioner took over Clifford F. Smith's shirt manufacturing business. One of the primary purposes for which petitioner was organized was to manufacture shirts for sale to the public. Shortly after petitioner's formation it acquired and operated a plant where leather goods were manufactured for sale to the public. Petitioner itself did not operate any religious or charitable enterprises. Cf. Trinidad v. Sagrada Orden de Predicadores, 263 U.S. 578. However, it claims to have satisfied the requirement that it be "organized and operated exclusively" *175 for religious purposes because its income, regardless of source, inured to the benefit of exempt organizations. Petitioner thereby seeks to come within the "destination of income" principle, which is illustrated by the holdings of the Courts of Appeals in Roche's Beach, Inc. v. Commissioner, 96 Fed. (2d) 776, reversing 35 B.T.A. 1087, and C. F. Mueller Co. v. Commissioner, 190 Fed. (2d) 120, reversing 14 T.C. 922. Petitioner has failed to establish its premise, namely, that the donees to whom it made contributions were in fact exempt organizations under the Internal Revenue Code. Petitioner is required to establish that its donees were organized and operated exclusively for charitable purposes, that no part of their net earnings inured to the benefit of a private shareholder or individual, and that no substantial part of their activities consisted of carrying on propaganda or otherwise attempting to influence legislation. Section 101(6). The only evidence pertaining to the alleged donees consists of lists of their names set forth in petitioner's returns for 1946 and 1947, and in an account labeled "Contributions" in petitioner's *176 ledger accounts for 1946. These names are set forth in our Findings of Fact. The parties could not stipulate that any of the donees were exempt from tax under Section 101(6) and petitioner failed to explain the identity of the listed individuals or to prove that any of the organizations were organized and operated exclusively for religious or charitable purposes. Furthermore, petitioner has failed to prove that the earnings of the listed organizations did not inure to private shareholders or individuals, and that the organizations did not participate in the proscribed activities relating to legislation. It is held that petitioner has failed to establish that any of its donees was exempt from tax under section 101(6) of the Code. It follows that the contributions in question are not deductible as contributions to exempt organizations. We need not advert to the merits of the "destination of income" rule. But see, Joseph B. Eastman Corporation, 16 T.C. 1502; Donor Realty Corporation, 17 T.C. 899. On brief, petitioner states that its failure of proof was caused by reliance on statements by opposing counsel to the effect that the exempt status of the alleged *177 donees was not in issue. This contention is without merit. Counsel for respondent expressly refused to stipulate that the alleged donees were tax-exempt. Petitioner has reference to remarks of opposing counsel which relate to a group of organizations other than the alleged donees in question under this issue. In addition to petitioner's failure to establish that it made any contributions to exempt donees, we observe other facts which distinguish the case from C. F. Mueller Co. v. Commissioner, supra, and Roche's Beach, Inc. v. Commissioner, supra. The cases, Roche's Beach, supra, and Mueller, supra, involved taxpayers whose assets and net income were either committed exclusively to charitable purposes by the terms of a testamentary trust or by a certificate of incorporation which could not be amended. In the instant case, the disposition of both earnings and assets was subject to the discretion of petitioner's Board of Directors, on which Smith and his wife held life tenure. Petitioner's Articles of Incorporation made no provision for the disposition of either income or assets, and the by-laws, which could be amended or revoked *178 by the Board of Directors, required that "in each calendar year a substantial portion of that year's net earnings shall be retained to increase the assets of this corporation." Thus, in 1946, petitioner reported income of $87,478.82 before a net operating loss carry-back, whereas it listed contributions of only $14,752.36. In addition, the directors' resolution providing for the disposition of petitioner's assets was not enacted until May 20, 1947; it was never incorporated into the Articles of Incorporation; and it was rescindable. We accordingly have found that exempt organizations obtained no indefeasible interests in petitioner's earnings or assets, and that there was no reasonable certainty, at any time, that any earnings or assets would be distributed to charitable organizations in the future. It is held that petitioner was not exempt from tax within the provisions of section 101(6) of the Code. Issue II - Deductibility of Premiums on Policies Insuring Petitioner's President's Life Respondent disallowed deductions for premiums paid by petitioner in 1946, 1947, and 1948, on six policies of life insurance insuring the life of Clifford F. SMith, petitioner's president. Petitioner *179 contends that the premium payments are deductible under section 23(a)(1)(A) of the Internal Revenue Code as additional compensation to Smith for personal services. Petitioner has the burden of proof under this issue. To come within the scope of section 23(a)(1)(A), it must establish that the premiums were in fact paid as additional compensation to Smith for personal services actually rendered, and that Smith's total compensation, including the premiums, was reasonable in amount. In addition, petitioner must also establish that the payments do not fall within the scope of section 24(a)(4), which specifically prohibits the deduction of premiums "* * * paid on any life insurance policy covering the life of any officer or employee, * * * when the taxpayer is directly or indirectly a beneficiary under such policy;" See: Arthur R. Womrath, Inc., 22 B.T.A. 335; L. Hyman & Co., Inc., 21 B.T.A. 159; G.C.M. 8432, IX-2 C.B. 114; Twin City Tile & Marble Co., 6 B.T.A. 1238, 1247, affirmed 32 Fed. (2d) 229; and *180 Atlas Heating & Ventilating Co., 18 B.T.A. 391 [389], where officers of a corporation did not regard amounts expended for insurance premiums by the corporation as additional compensation. The evidence does not support petitioner's assertion that the premiums were paid as compensation for services. The minutes of petitioner's Board of Directors' meeting of July 25, 1946 clearly fix Smith's salary at the greater of $1,000 per month or 10 per cent of petitioner's earnings; the separate resolution passed at the same meeting authorizing the premium payments characterizes the payments only as "an expense of the business operations of this corporation" and does not refer to compensation; the payments were not reported by the petitioner as deductions for salary expense or as officers' compensation; Smith did not report the premiums in his personal returns as part of his income. Under the evidence before us, we can conclude only that the premium payments constituted gratuitous payments by petitioner. It is held, and we have so found, that the payments did not constitute compensation to Smith for services rendered. Respondent did not err in disallowing the deductions. In *181 view of the above holding, it is unnecessary to consider respondent's contentions concerning failure of proof by petitioner under section 23(a)(1)(A), on the question of the reasonableness of Smith's compensation, and under section 24(a)(4), on the identification of the beneficiaries of the policies. Issue III - Beginning Date of Petitioner's First Accounting Period Petitioner's return for 1946 reported income from operations commencing January 1, 1946. Petitioner's pleadings, however, allege that it began business on April 1, 1946, and that the income reported for 1946 should be reduced to exclude income representing operations in January, February, and March, 1946. Petitioner contends that the income for these three months is chargeable to a predecessor sole proprietorship operated by Smith. The evidence adduced on this issue is in conflict. Petitioner relies on evidence indicating that it did not have a bank account until May 23, 1946, and that the social security tax return for the quarter ending March 31, 1946, was made out in the proprietorship's name. Petitioner also relies on the testimony of Smith, who stated that prior to April 1, 1946, all purchases were paid from *182 and all sales proceeds were deposited to the proprietorship's bank account, and that petitioner had no employees and performed no corporate acts during the period. Petitioner admits that its Articles of Incorporation were filed on January 10, 1946, and it does not seek to impugn the contents of the minutes of the first Board of Directors meeting of July 25, 1946. These minutes commence with Smith's report that he and his wife conveyed the proprietorship's assets to petitioner by bill of sale and assignment dated December 31, 1945, that the officers named in the Articles of Incorporation operated the business for petitioner from January 1 to January 10, 1946, and that "from and after the 10th of January, 1946, the said business had actually been owned and operated by this corporation, to which all said assets had been theretofore under date of December 31, 1945, transferred." The return filed by petitioner for 1946 lists January 1, 1946, as the date of incorporation and is otherwise consonant with the minutes of the directors' first meeting. The return reflects deductions for all expenses incurred in 1946, including depreciation, without proration for any period of less than 12 *183 months. Petitioner did not introduce its journal. The ledger sheets which were introduced in evidence contain entries commencing with January 1, 1946. Petitioner relies upon testimony to the effect that some of the entries were in fact recorded subsequent to April 1946. However, the question under this issue must be decided upon the entire evidence. Petitioner's theory is inconsistent with the minutes of the first directors' meeting, and with its return for 1946. A preponderance of the evidence establishes that petitioner commenced its business not later than January 10, 1946, the date on which its Articles of Incorporation were filed and its corporate existence began. California Civil Code sections 292, 596.6, 1941 ed. Cf. Ajax Engineering Corporation, 17 T.C. 87, affd. 196 Fed. (2d) 727. Petitioner introduced no evidence to establish an amount, if any, by which the income it reported for 1946 should be reduced to reflect any proprietorship earnings during the period of January 1 to January 9, 1946, inclusive. The record affords no basis upon which we can determine whether the proprietorship had any earnings in this period. We accordingly have found *184 that no part of the income reported in petitioner's 1946 return was produced by the operations of its predecessor. Issue IV - Applicability of Section 112(g)(1)(C) to the Disposition of Petitioner's Assets The question under this issue is whether the transfer of petitioner's assets to Sportogs in return for Sportogs stock constituted a tax-free exchange under section 112(b)(4) of the Code pursuant to a reorganization as defined by section 112(g)(1)(C). Respondent's position is that the transaction did not satisfy the requirement that Sportogs acquire "substantially all the properties" of petitioner. Section 112(g)(1)(C). He questions whether Sportogs acquired petitioner's 58,000 shares of Sportogs stock as part of the exchange. This is a question of fact. We have considered the evidence and conclude that the 58,000 shares were acquired by Sportogs in the exchange. Respondent's other arguments under this issue are without merit. The transaction constituted an exchange under section 112(b)(4) pursuant to a reorganization as defined by section 112(g)(1)(C). Petitioner has not contested the addition to tax determined under section 291(a) with respect to its failure to file a *185 timely return for 1947. Decision will be entered under Rule 50.