The Lang Chevrolet Company, et al. [1] v. Commissioner. Lang Chevrolet Co. v. Commissioner
Docket Nos. 950-66 - 954-66.
United States Tax Court
T.C. Memo 1967-212; 1967 Tax Ct. Memo LEXIS 50; 26 T.C.M. (CCH) 1054; T.C.M. (RIA) 67212; October 27, 1967
Edmund A. Spencer and Peter H. Huizenga, 38 S. Deaborn St., Chicago, Ill., for the petitioners. Clarence E. Barnes, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: These consolidated proceedings involve income tax deficiencies *51 and overpayments as follows: Docket
Taxable
Over-
Petitioner
Number
Year
Deficiency
payment
The Lang Chevrolet Co.
950-66
1962
$2,925.83
1963
5,275.20
Lang Chevrolet Sales Inc.
951-66
1962
1,519.90
$ 877.76
1963
3,426.61
1,069.12
Fred W. Lang and Estate of Helen M.
Lang, Deceased, et al.
952-66
1962
1,763.97
1963
3,657.71
Richard F. Lang
953-66
1962
2,740.96
1963
4,810.76
Shirley A. Lang
954-66
1962
227.70
1963
297.00 The issues for decision are: 1. Whether The Lang Chevrolet Company (hereinafter sometimes referred to as Lang Chevrolet) and Lang Chevrolet Sales, Inc. (hereinafter sometimes referred to as Lang Sales), can deduct as ordinary and necessary trade or business expenses under section 162, [2] amounts incurred due to Richard Lang's (hereinafter sometimes referred to as Richard) racing of Chevrolet Corvettes. 2. Whether the expenses incurred by Lang Chevrolet and Lang Sales (hereinafter sometimes referred to as the companies or the corporations) for Richard's racing constituted constructive dividend income *52 to Fred W. Lang (hereinafter sometimes referred to as Fred) and to Richard. 3. Whether the expenses incurred by the corporations in allowing Fred and Richard the free and unlimited use of Lang Chevrolet's automobiles constituted ordinary and necessary trade or business expenses deductible under section 162. 4. Whether the free and unlimited use of these automobiles constituted dividend income to Fred and Richard under section 301. 5. Whether the personal use of an automobile owned by Lang Oldsmobile-Cadillac, Inc. (hereinafter referred to as Lang Olds) constituted dividend income to Shirley Lang (hereinafter sometimes referred to as Shirley). 6. Whether Lang Sales is entitled to deduct for the years 1962 and 1963 certain amounts allegedly expended by Fred for meals and lodging in connection with racing. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Fred W. Lang and Helen M. Lang filed their joint income tax returns for the taxable years 1962 and 1963 with the district director of internal revenue, Cincinnati, Ohio. At the time of filing the tax returns, Fred and Helen M. Lang had their legal residence in Xenia, *53 Ohio, where Fred presently resides. Helen M. Lang died in 1966 and the Estate of Helen M. Lang, Deceased, Winters National Bank and Trust Co., Dayton, Ohio, Executor, was substituted as petitioner-party to this proceeding. Richard F. Lang and Shirley A. Lang are the children of Fred and filed their respective income tax returns for the years 1962 and 1963 with the district director of internal revenue, Cincinnati, Ohio. At the time of filing these returns, their legal residences were in Xenia, Ohio, where they presently reside. The Lang Chevrolet Co. is located in Xenia, Ohio. It was incorporated in Ohio in 1928. The physical plant encompasses 100,000 square feet of land on two locations and has six buildings and a substantial open space for car storage and exhibits. In 1962 and 1963, Fred was president and Richard was one of the vice presidents and the general manager of Lang Chevrolet. The activities of the dealership consisted of selling the complete line of new Chevrolet cars and trucks. Lang Chevrolet also sold used cars and trucks that were acquired by trade-in or were purchased from wholesalers. The dealership of Lang Chevrolet also included a service department providing *54 mechanical, body, and paint shop services. In the years 1962 and 1963, the number of persons employed by Lang Chevrolet were 59 and 63, respectively. Lang Chevrolet Sales, Inc., is located in Fairborn, Ohio. It was incorporated in Ohio in 1946. The plant encompasses 240,000 square feet of land. Lang Sales has several buildings and a substantial open space for car storage and exhibits. In 1962 and 1963, Fred was president and Richard was general manager. The operation of this dealership was similar to Lang Chevrolet except that Lang Sales also sold the complete line of new Oldsmobiles, and that the corporation in 1962 and 1963 employed 60 and 66 persons, respectively. Both corporations employed the accrual method of accounting and for the taxable years 1962 and 1963 filed their Federal income tax returns with the district director of internal revenue, Cincinnati, Ohio. The outstanding shares in both corporations were owned by the following persons: Number of Shares Held
Lang
Lang
Shareholders
Chevrolet
Sales
Fred W. Lang
262
80
Helen M. Lang
69
70
Mildred O'Toole
5
5
Shirley A. Lang
78
Richard F. Lang
78
Total shares
492
155
The tax *55 returns and the notices of deficiency for Lang Chevrolet and Lang Sales disclosed the following information: 1962
1963
Lang
Lang
Chevrolet
Lang Sales
Chevrolet
Lang Sales
Gross Sales
$3,306,016.03
$4,368,682.89
$3,596,528.39
$5,227,310.05
Gross Profit
450,081.27
502,849.98
504,214.18
565,908.19
Advertising Expense
18,817.14
23,299.20
22,997.60
38,496.79
Racing Car Expense Disallowed
by Respondent [3]
5,356.60
2,922.89
9,874.58
6,589.63
The Lang family is well known in the Xenia, Ohio area. This is due in part to the automobile agencies and the fact that Fred is president of a building and loan association and vice president of a local bank. In 1962 and 1963, Richard was general manager of Lang Chevrolet, Lang Sales, and Lang Olds. Richard had an early interest in cars as he had grown up working in his father's automobile agencies. While in college he majored in economics, but also studied advertising. *56 During this period he attended several sports car races and thought this sport would be a good means to advertise his father's automobile dealerships. Upon Richard's suggestion that the companies employ this type of advertising, the corporations began a program of competitive sports car racing in 1959. Richard continued to compete with the Chevrolet Corvettes until 1964 when petitioners were informed by the respondent that racing may not be an ordinary and necessary trade or business expense deductible by the corporations. Prior to and during 1962 and 1963, Lang Chevrolet and Lang Sales felt General Motors possessed significant control over policy decisions made by a dealership. At this time the companies considered Dayton beyond their "area of sales responsibility" as designated by General Motors, although Dayton is located 16 miles from Xenia and 12 miles from Fairborn. As a result they felt that General Motors might rebuke the companies if they purchased advertising in this locale. Accordingly, Lang Chevrolet and Lang Sales did not advertise in that area even though they considered Dayton a fruitful marketing area for their product. Although General Motors did not officially *57 sponsor or sanction any racing in Corvettes, Richard was publicized several times for his racing achievements in the "Corvette News" which is printed by General Motors and distributed to owners of Corvette motor cars. In 1962 and 1963, Richard placed fourth in the overall national standings but was the second ranking Corvette driver in both years. In 1964, Richard was the top Corvette driver in the country but placed third in the overall national standings. When Richard competed in the races, only a small Lang license frame or a small Lang sticker were [was] attached to the car because the regulations forbid any advertising on the automobile. However, the rules did allow the name of the driver to be painted on the car. Accordingly, the name Lang was painted on the Corvettes in the largest letters allowable. In addition, the trailers and tow cars used in conveying the Corvettes to the races clearly indicated that Lang Chevrolet was the sponsor. The races were normally held on weekends. Richard engaged in races all over the country, as far away as California and Florida. Most of these races were regional or national races which Fred and Richard felt would be the best means to *58 achieve a national standing that could reflect on the qualities of the automobile and the ability of Lang's mechanics. There were a number of other cars in these races that were also sponsored by automobile dealers. During the period 1962 and 1963, Fred was an integral part of the Lang racing team performing various tasks at the race track to further the success of Richard. Fred spent $45 a day for food and lodging for himself, Richard and the mechanic, and during 1962 and 1963 they were away from home racing 31 and 40 days, respectively. Fred did not present any evidence of these expenditures to the corporation or submit any vouchers. Lang Sales has never reimbursed Fred for these expenses or recognized the liability and the expense on their books. Richard was not paid to race by the companies and his total winnings amounted to $300, which he turned over to the business manager of the corporation. However, Richard did receive several trophies in acknowledgment of his success. Richard's racing Corvette and the trophies were displayed in the automobile agency. When racing was undertaken by the corporations, conventional advertising was decreased as the companies felt that the *59 publicity gained by racing would compensate for this reduction in paid advertising. When Richard placed highly or won a race, the local papers would give him a "big play." Petitioners made a number of sales as the direct result of the racing. Lang Olds, not presently before us, was incorporated in Ohio in 1959 and is located in Xenia, Ohio. During 1962 and 1963, the outstanding shares of stock were owned in the following proportions by the following officers: Percent of
Officer
Stock Owned
Fred W. Lang, president
50
Richard F. Lang, vice president
25
Shirley A. Lang, secretary
and treasurer
25 Lang Olds is located on 20,000 square feet of land and the business occupies two buildings and sells and services a complete line of new Oldsmobiles and Cadillacs. The number of persons employed by Lang Olds during this period was 16. In 1962 and 1963, Shirley was allowed the free and unlimited use of a Lang Olds automobile, and for these years the respondent determined the income tax deficiencies and explained the adjustments as follows: During the year 1962 [and 1963] Lang Oldsmobile-Cadillac, Inc., permitted you to use corporate property without compensation. *60 The value of such use constitutes dividend income under sections 301 and 316 of the Internal Revenue Code, and is includable in your taxable income under section 61 of the Internal Revenue Code in the following amount: Fair rental value of personal use of company car $990.00 It was common practice in the industry to provide an employee with the opportunity of renting a car for a minimal amount per month and to allow executives and supervisory personnel the free and unlimited use of the agency automobiles. In Lang Chevrolet, the executive and supervisory personnel were allowed the free use of an automobile. Fred and Richard enjoyed this privilege from Lang Chevrolet as employees and not as stockholders. Opinion The first issue is whether Lang Chevrolet and Lang Sales are allowed to deduct as trade or business expenses under section 162, the amounts incurred to sponsor Richard's sports car racing. This is a factual issue and the burden is on the companies to prove that the sports car racing expenses were "ordinary and necessary" to the operation of their automobile dealerships. Deputy v. du Pont, 308 U.S. 488 (1940). *61 "Ordinary" has been interpreted to mean that the expense should have a reasonably proximate relation to the operation of petitioner's trade or business, Challenge Manufacturing Co., 37 T.C. 650 (1962); while "necessary" is construed to mean helpful and appropriate in promoting and maintaining the trade or business. Blackmer v. Commissioner, 70 F. 2d 255 (C.A. 2, 1934). In general, allowable advertising has been held to meet the above tests and therefore qualifies as a section 162 expense. Since petitioners assert that these expenditures were incurred for advertising, the corporations' burdens are to prove that their purpose in sponsoring Richard's racing activity was to gain a reasonable amount of publicity for the corporate trades or businesses. Rodgers Dairy Co., 14 T.C. 66 (1950). An objective indication of this intention is demonstrated by the reasonableness of the relationship between the amount expended for the activity compared to the amount of *62 benefit reasonably calculated to be derived. Sanitary Farms Dairy, Inc., 25 T.C. 463 (1955); Rodgers Dairy Co., supra. Lang Chevrolet deducted as racing expenses the amounts of $5,356.60 and $9,874.58 in 1962 and 1963, respectively, while Lang Sales deducted as racing expenses the amounts of $2,922.89 and $6,589.63, for the same years. These amounts are not unreasonable. Combined advertising expenditures of Lang Chevrolet and Lang Sales, including racing, totaled $50,395.83 and $77,958.60 for 1962 and 1963, respectively. These combined advertising expenditures constituted approximately seven-tenths of 1 percent and 1 percent respectively, of the total gross sales for those years. Surely, in this highly competitive business, these amounts for advertising are not unreasonable when compared to total sales. Moreover, we do not consider the amounts expended on racing to be out of proportion when compared to the extent of radio and newspaper coverage derived. Furthermore, racing provided petitioners with a gimmick, something that set Lang Chevrolet and Lang Sales apart from the other Chevrolet dealerships in the area and allowed the companies to promote their *63 name outside their "area of sales responsibility" designated by General Motors. We think the racing activities constituted an appropriate method for promoting the sales of cars. Respondent asserts that the decision to race was motivated for purely personal reasons and that any tie-in it might have with the automobile dealership was only made in retrospect. It is impossible to look into Richard's mind to determine his motivation for suggesting racing as an advertising medium. Surely Richard must have enjoyed something about racing or else he would not have risked his life every time he took a Corvette on the track. However, we can find no case which says that because an employee derived some pleasure from his assigned task, which also had a bona fide business purpose, that the corporation should be denied the deduction for the expenditures necessary for carrying out of the task. Petitioners point out that the reasons Richard was employed to race the automobiles were his apparent driving skill, the fact that it would be less expensive to the corporation for Richard to drive than hiring someone else and that a Lang driving a Chevrolet easily and logically connects racing with the Lang *64 Chevrolet dealerships. Moreover, the standards employed to determine whether an expense is deductible under section 162 normally are spelled out in terms relating to the benefit inuring to the business and not to the enjoyment derived by the employee. Louis Boehm, 35 B.T.A. 1106 (1937). It is well established that the activity for which the expenses are claimed must be "reasonably calculated" to advertise [4] the business of the taxpayer in order for it to be considered advertising and therefore deductible under section 162. We find that petitioners have met these tests. The respondent has questioned the logical connection between racing and the selling and servicing of automobiles. To us, there is a reasonable relationship between the racing of a Chevrolet sports car with a man named Lang at the wheel and the selling and servicing of Chevrolet automobiles by the Lang dealerships. We do not find this connection to be illogical. A dealership's ability to renovate a Corvette to the standards required to maintain a national *65 champion naturally creates confidence in the mind of the customer concerning the dealer's overall knowledge of Chevrolets and his ability to service a regular automobile. Petitioners have shown that when Richard won a race or placed highly, he was given a "big play" in the local paper. This "big play" had a favorable advertising effect for the corporation as the community knew Richard Lang was closely associated with Lang Chevrolet and Lang Sales. From all of the above, we conclude that in this instance racing met the test for advertising and hold that the expenditures are deductible by Lang Chevrolet and Lang Sales under section 162. Respondent also argues that the expenditures borne by the Lang corporations for Richard's racing constituted income in the form of constructive dividends to Fred and Richard. In support of this theory, respondent has cited several cases [5] in which expenditures for racing a boat were found to be constructive dividends where the taxpayers had contended that they were trade or business expenses. However, these cases demonstrate that expenses, possibly incurred for personal reasons, will be considered constructive dividends where they are found to *66 be nondeductible business expenses. As we have found the expenditures to be deductible under section 162 as advertising, this precludes any finding that the amounts paid constituted dividends. A portion of the deficiencies against the Lang Sales corporation was based on the disallowance of certain expenses incurred in connection with corporate automobiles used by Fred and Richard for their personal benefit. Respondent asserts that these expenses were solely for the benefit of Fred and Richard as shareholders, and so constituted constructive dividends to these shareholders, rather than deductible business expenses. We find that the expenses were incurred in allowing Fred and Richard the free and unlimited use of corporate automobiles, but that this was a benefit inuring to all corporate officers and supervisory personnel primarily for corporate business purposes and therefore deductible under section 162 as ordinary and necessary business *67 expenses. Lang Sales has shown that allowing employees the free use of corporate automobiles was normal in the automotive sales industry and that they only followed this precedent by allowing their employees the same fringe benefits. We find that these expenditures under the above circumstances were ordinary and appropriate to the conduct of the petitioner's business. See Waring Products Corporation, 27 T.C. 921 (1957); Champion Spark Plug Co., 30 T.C. 295 (1958), affd. per curiam 266 F. 2d 347 (C.A. 6, 1959). Our conclusion is based on the fact that fringe benefits of this kind are generally expenses incurred by a business to promote employee good will and strengthen the employer-employee relationship. As Richard and Fred each were shareholders and employees of the Lang Chevrolet corporation, the beneficial use of the automobiles accruing to them could have been received in either capacity. The facts indicate that other employees who were non-shareholders of Lang Chevrolet also obtained the same benefit. We hold that this benefit accrued to Fred and Richard in their capacity as employees of Lang Chevrolet and is deductible by the corporations *68 as business expense. Respondent based this part of the deficiencies against Fred and Richard on his determination that the expenses for the use of these automobiles constituted constructive dividends from Lang Chevrolet to Fred and Richard. [6]
Section 301 defines a dividend as "a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock * * *." [Emphasis added.] This is amplified by the regulations, section 1.301-1(c) which states "section 301 is not applicable to an amount paid by a corporation to a shareholder unless the amount is paid to the shareholder in his capacity as such." However, we have held above that the use of the automobiles was a benefit Fred and Richard received in their capacities as employees, not as *69 shareholders. Therefore, these benefits do not qualify as a dividend under section 301, as this was not a "distribution of property * * * made by a corporation * * * with respect to its stock." [Emphasis added.] With respect to Shirley, an employee and shareholder in Lang Olds, the issue is whether her free and unlimited use of an Oldsmobile automobile of Lang Olds constituted a dividend to her. Normally, the burden is on the petitioner to overcome the presumption of correctness which attaches to the respondent's determination of a deficiency. Respondent determined $990 per year to be the fair rental value of the automobiles used by Shirley in 1962 and 1963. This amount was not unreasonable as Fred testified that he charged automobile rentals of between $88 and $113 per month, and there is nothing to indicate that this amount was not also applicable to Shirley's automobile. Respondent further asserts that this income constituted dividends to Shirley. There is nothing to indicate and we shall not assume that the policy of Lang Olds was to allow executive and supervisory personnel the free use of corporate automobiles. As Shirley has not presented any evidence to refute respondent's *70 allegation we must uphold the determination that the unrestricted beneficial use of these automobiles constituted dividend income to Shirley in the amount determined. The final issue for decision is whether Lang Sales may deduct for the taxable years 1962 and 1963, amounts expended in these years by Fred for meals and lodging incurred in connection with the races but for which reimbursement has never been sought by Fred and for which the liability and corresponding expenses have never been reflected on the books of Lang Sales. Petitioners assert that if racing is an advertising activity expense for which depreciation of the Corvettes and gasoline is allowable, then expenditures for lodging and meals while attending the races should also be deductible. This argument neglects to take the facts into account. Under the present circumstances, it is clear that Fred never intended the expenditures to be borne by the company. This is indicated by the fact that vouchers were never submitted, reimbursement payments were never made and liabilities for repayment were never accrued on the books of Lang Sales. As four years have elapsed since most of the expenditures were made, it is apparent *71 that Fred never intended these expenses to be reimbursed by Lang Sales. He made no effort to collect any of the amounts. This argument appears to be only an afterthought [7] on the part of the petitioners. Accordingly, we find that the expenses are not deductible by Lang Sales. Decisions will be entered for the petitioners in docket Nos. 950-66, 952-66, and 953-66. Decision will be entered for the respondent in docket No. 954-66. Decision will be entered under Rule 50 in docket No. 951-66. Footnotes
1. Cases of the following petitioners are consolidated herewith: Lang Chevrolet Sales, Inc., docket No. 951-66; Fred W. Lang and Estate of Helen M. Lang, Deceased, Winters National Bank and Trust Company, of Dayton, Ohio, Executor, docket No. 952-66; Richard F. Lang, docket No. 953-66; and Shirley A. Lang, docket No. 954-66.↩
2. All statutory references are to the Internal Revenue Code of 1954.↩
3. These expenses were deducted as company car and demonstration expense and depreciation on Lang Chevrolet's income tax returns, and as company car and demonstration expense on Lang Sales' income tax returns.↩
4. James Schulz, 16 T.C. 401↩ (1951).
5. American Properties, Inc., 28 T.C. 1100 (1957), affd. 262 F. 2d 150 (C.A. 9, 1958); W. D. Gale, Inc. v. Commissioner, 297 F. 2d 270↩ (C.A. 6, 1961), affirming a Memorandum Opinion of this Court.
6. Counsel for respondent stated at the trial that he based his argument that this is income to petitioners solely on the theory that the use of the cars was a constructive dividend and not that it was additional compensation. Accordingly, we confine ourselves to a decision on the dividend question.↩
7. Stanley H. Klarkowski, et al. v. Commissioner, - F. 2d - (C.A. 7, Sept. 12, 1967). For dismissal of the argument of one party as having no merit as the contention was only an "afterthought."↩