EDWARD P. CLAY AND MARY CLAY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1006–64. Filed July 21, 1966.

*S. Gordon Shreffler*, for the petitioners.
*Hugh C. McMahon*, for the respondent.

#### OPINION

FORRESTER, *Judge:* The respondent has determined deficiencies in the income tax of the petitioners for 1960 and 1961 in the amounts of $200.54 and $172.18, respectively. Certain matters have been compromised by the parties so that the sole issue remaining for our consideration is whether the sum of $405 paid during each of the years in issue by petitioner Edward P. Clay's employer (Leavenworth Motors, Inc., a corporation principally owned by Edward P. Clay) as premiums on a policy of group, term life insurance on the life of petitioner Edward P. Clay constitutes taxable income to the petitioners within the purview of section 61(a) of the Internal Revenue Code of 1954.[1]

---

[1] All statutory references are to the Internal Revenue Code of 1954.

All of the facts have been stipulated and are incorporated by this reference. Those necessary to an understanding of the issue before us are set out herein.

Petitioners are husband and wife who resided at Leavenworth, Kan., during the years in issue and their joint Federal income tax returns for such years were filed with the district director of internal revenue, Wichita, Kans. Mary Clay is a petitioner herein solely by reason of having filed joint returns with her husband; consequently, subsequent references to petitioner will refer to Edward P. Clay only.

During 1960 and 1961 petitioner owned 75 percent of the issued and outstanding capital stock of Leavenworth Motors, Inc., and was employed as its president at an annual salary of approximately $16,000 and $14,000 during the respective years in issue. He described himself as manager of such corporation on his income tax returns for such years which are stipulated, respondent does not quarrel with such job description, and consequently we find it as a fact.

The remaining 25 percent of the capital stock of Leavenworth Motors, Inc., was owned during the years in issue by W. J. Avis, such corporation's vice president.

During the years in issue Ford Motor Co. offered certain of the owners of its Ford dealerships (hereinafter referred to as dealer-owners) a group, term life insurance plan in which participation by an eligible dealer-owner was on a voluntary basis. Pertinent portions of the certificate of insurance embodying such plan follow:

THE TRAVELERS
INSURANCE COMPANY

\* \* \* \* \* \* \*

Certificate of Insurance

\* \* \* \* \* \* \*

issued to
Ford Motor Company

\* \* \* \* \* \* \*

(Hereinafter called the Policyholder)

covering individuals who are owners of interests in Distribution Units \* \* \* and who are enrolled under said group policy as Participants in accordance with the provisions thereof.

\* \* \* \* \* \* \*

*Participant* EDWARD P. CLAY
*Beneficiary* MARY A. CLAY, My Wife
Amount of Life Insurance— ———— age (full years) ————
 Less than 65 $56,250

\* \* \* \* \* \* \*

THIS IS TO CERTIFY that subject to the terms, conditions and provisions of said group policy No. G 142000, issued and delivered by the Company to the Policyholder, the Participant named above is insured as hereinafter set forth.

\* \* \* \* \* \* \*

Under the group policy the Participant has the right to change the beneficiary.

### TERMINATION OF INSURANCE

The insurance of any Participant covered under the group policy \* \* \* shall terminate automatically at the earliest time specified below:

(1) The last day of the calendar quarter in which he ceases for any reason other than disability

(a) to be actively engaged in the operation of such Distribution Unit; and

(b) to be the proprietor of, or the owner of at least a 20% interest in, such Distribution Unit.

\* \* \* \* \* \* \*

(4) The date of discontinuance of the group policy as described therein.

Ford Motor Co. issued to its dealer-owners an explanation of such group, term life insurance plan in pertinent part as follows:

### ELIGIBILITY REQUIREMENTS

An Owner of a Ford Motor Company dealership which qualifies under the Plan is eligible for life insurance if he is:

1. Actively engaged in the operation of the dealership; and

2. The proprietor of the dealership, or the owner of at least a 20% interest in the dealership, \* \* \* [the amount of life insurance available to be varied ratably with the number of Ford-built automobiles and trucks sold by the dealership and by the dealer-owners' percentage of ownership of the dealership, a 20 percent ownership being the minimum requirement for eligibility].

\* \* \* \* \* \* \*

Ownership Class is determined by Ford Motor Company on the basis of the financial interest [of the dealer-owner] \* \* \* [which] may be considered as including, in addition to direct ownership, if any,

1. Any ownership interest in such dealership which is being held in a trust under which the active Owner is a beneficiary \* \* \*

2. Any ownership interest in such dealership which is being held by a corporation or a partnership, but only to the extent of an active Owner's ownership interest in such holding corporation or partnership.

3. Directors' qualifying shares in such dealership, which shares shall be apportioned among active Owners \* \* \* [ratably to the direct ownership of each].

4. Any ownership interest in such dealership held directly by \* \* \* any member of the active Owner's immediate family \* \* \*

\* \* \* \* \* \* \*

If two or more Owners who are actively engaged in the operation of a dealership are members of the same immediate family, the shares or other ownership interest of inactive members of the family may be allocated to such active Owners \* \* \* [ratably].

The same ownership interest in a dealership may not be credited to more than one active Owner at the same time.

\* \* \* \* \* \* \*

TERMINATION OF OWNER INSURANCE

The insurance of an Owner * * * will terminate at the end of the calendar quarter in which * * *

1. The date he ceases to be actively engaged in the operation of such dealership for any reason other than disability;

2. The date he ceases to have at least a 20% ownership interest in such dealership; or

3. The date of termination of the dealership's Sales Agreement or Associate Dealer Agreement with Ford Motor Company.

\* \* \* \* \* \* \*

QUESTIONS AND ANSWERS

\* \* \* \* \* \* \*

2. Q. Why aren't Owners who have less than 20% interest in dealerships permitted to have life insurance under this Plan?

A. Participation in the Ford Motor Company Dealer-Owner Group Life Insurance Plan is restricted to Owners who have a substantial financial interest because such Owners tend to be active in the operation of the dealership.

\* \* \* \* \* \* \*

6. Q. What cash values are accumulated under the insurance provided by this Plan?

A. None. Like all other term insurance, this insurance does not have any cash value for the insured Owner at any time.

\* \* \* \* \* \* \*

8. Q. What part of the Plan's cost is being assumed by Ford Motor Company?

A. Ford Motor Company as the policyholder is guaranteeing all costs which are in excess of the Owners' contributions. In addition, the Company will assume certain administrative functions.

During the years in issue petitioner was under 65 years of age, Leavenworth Motors, Inc.'s sales of Ford products were in such amounts, and petitioner's ownership of such corporation was of such percentage, as to entitle him to life insurance under the described plan in the amount of $56,250 which life insurance he elected to take naming his wife, Mary A. Clay, as beneficiary. On the enrollment card by which petitioner applied for the subject insurance he was required to and did certify, inter alia, "that I am now actively engaged in the operation of the above-named dealership and the above information is true."

Leavenworth Motors, Inc., paid the premiums on this policy in the amounts of $405 for each of the years in issue and petitioner did not treat such amounts as income to him. The statutory deficiency notice states as to each such premium, "It is determined that this constitutes additional salary or compensation. Therefore, your taxable income is increased $405.00."

Respondent in this case is contending under the provisions of section 61(a)(1) of the Code and it is now axiomatic that such section asserts the full measure of Congress' taxing power. *Helvering* v. *Clifford*, 309 U.S. 331; *Commissioner* v. *Glenshaw Glass Co.*, 348 U.S. 426; and *Commissioner* v. *LoBue*, 351 U.S. 243.

Section 61(a)(1) was interpreted in 1920 by what was then article 33 of Regulations 45, which then read in pertinent part:

*Compensation paid other than in cash.*—* * * Premiums paid by an employer on policies of group life insurance covering the lives of employees, the beneficiaries of which are designated by the employees, are not income to such employees. [T.D. 2992, 2 C.B. 76]

This identical language has been retained in the regulations to the present time and is now included in section 1.61–2(d)(2) with only two changes. The changes are that the life insurance is now further limited to term policies and the employees' income is now defined as gross income. Neither change is material to the facts of the instant case.

Respondent's regulation above was explained and supported by him by Solicitor's Law Opinion No. 1014, 2 C.B. 88 (1920), in pertinent part as follows:

The question is raised whether the premiums * * * are income to such employees.

The amounts for which the lives of the individual employees are insured under these policies vary according to the length of time the employee has been in the service of the employer and the contract made by the employer, * * *

In Law Opinion 528 it was held:

[Such premiums are a legitimate expense of the corporation, being in the nature of additional compensation to the employees which should be treated by such employees as additional salary. The above statement regarding additional employees' salary is held to be dictum.]

\* \* \* \* \* \* \*

It is readily possible to consent in the conclusion of the above opinion without concurring in the reasoning by which it was supported. The assumption that in order to constitute a deductible expense on the part of a corporation the premiums paid must be in the nature of compensation to the employees does not appear to be well founded. * * *

\* \* \* \* \* \* \*

It does not necessarily follow, however, that such expenditures are income to the employees.

\* \* \* \* \* \* \*

The financial benefits under these policies do not move to the employees personally, but only to their heirs or dependents after their deaths, and the payment of the amount of the policy is, in any case, contingent upon the employee's continuance until death in his present employment which may be terminated at any time, either by himself or by his employer, and upon the continued payment of the premiums by the employer. The employee has no option to take the amount of the premiums paid for the policy covering his life instead of the insurance. The policy has no paid-up value either to the employer or the employee. Such insurance creates no debt on the part of the employer, pays no debt to the employee, and discharges no legal obligation resting upon the employee. The premium paid therefor is in no sense "gain derived" or realized or capable of being realized by the employee in dollars and cents, but only in the feeling of contentment that provision has been made for dependents. It is

paid by the employer not as compensation to the employee, but as an investment in increased efficiency. It is therefore not income to the employee.

\* \* \* \* \* \* \*

It is therefore concluded that while premiums paid for group life insurance constitute proper deductions under the head of "ordinary and necessary expenses," in computing the net income of an employer, whether individual or corporation, they do not constitute additional compensation to the employees whose lives are insured and are, therefore, not required to be returned as income by such employees.

Respondent asserts and petitioner does not contest that the premiums here paid by Leavenworth Motors, Inc. (and possibly in small part by Ford Motor Co.), during the years in issue would be fully taxable to petitioner were it not for section 1.61–2(d)(2), Income Tax Regs., *supra*. Respondent then adopts a purely factual approach in an effort to demonstrate that the facts of this case do not bring petitioner within the exception of the regulation. Respondent argues on brief, "Petitioner became eligible for insurance under this plan by virtue of his ownership of 75% of the capital stock of Leavenworth Motors, Inc., and not because of his capacity as an employee."

Respondent states that the sole and precise question before us is whether the premiums here paid fall within the intendment of the regulation and argues, this "insurance arrangement is exclusively for the benefit of substantial owners of dealerships, as such." Neither party cites any cases dealing with a comparable situation, and we have found none.

Critical examination of these facts upon which respondent relies leads us to an opposed conclusion, for it seems clear to us that this insurance arrangement was designed primarily to promote and foster an active management role and increasing participation in the day-to-day business affairs of the dealership by the dealer-owner. These are more the characteristics and attributes of an employee than an owner who might be primarily an investor, and unfamiliar with details of operation, and furthermore, the uncontested facts of this case are that petitioner was a salaried employee of Leavenworth Motors, Inc., and the manager of its business. .

Under the plan, as a dealer-owner's percentage holding in the dealership increased he was entitled to increased insurance coverage and the explanatory pamphlet explains that owners who have a substantial financial interest tend to be active in the operation of the dealership.

This pamphlet, petitioner's application or enrollment card, and the insurance certificate are replete with requirements that the owner be active in the business. Indeed, by his application petitioner was required to and did certify that he was actively engaged in the operation of the dealership, and the certificate provides, and the pamphlet

explains, that his insurance coverage "shall terminate automatically" if he ceases to be actively engaged in its operation.

Respondent argues finally that petitioner, as the controlling shareholder of Leavenworth Motors, Inc., "clearly had the option to take the amount of the premiums paid for his insurance protection in cash as compensation or dividends." We look upon this as arguing in effect that if a taxpayer, having followed a perfectly legitimate, authorized, and well recognized nontaxable course of action in order to arrive at a certain result, could have reached that same result by following a different taxable course of action, that the Court by some kind of fiat must relegate him to the taxable course of action. This we will not do. *Gregory* v. *Helvering*, 293 U.S. 465, 469; *Jones* v. *Helvering*, 71 F. 2d 214, certiorari denied 293 U.S. 583.

*Decision will be entered under Rule 50.*