MAURICE A. ENRIGHT AND MILDRED L. ENRIGHT, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3913-69.   Filed September 7, 1971.

*G. C. Scharfy* and *John C. Straub*, for the petitioners.
*Buckley D. Sowards*, for the respondent.

OPINION

HOYT, *Judge:* The Commissioner determined deficiencies in the petitioners' Federal income taxes in the amount of $314.88 for the calendar year 1966 and $361.28 for the calendar year 1967. The issue presented is whether certain group-term life insurance premiums paid by a corporation for a life insurance policy on the life of a member of its board of directors are includable in the director's gross income.

All of the facts have been stipulated and the stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The petitioners, Maurice A. Enright and Mildred L. Enright, are husband and wife. Their legal residence when they filed their petition was Amherst, Ohio. Mildred L. Enright is a party herein solely because she filed joint income tax returns with her husband for the years before us. Accordingly, Maurice A Enright will hereinafter sometimes be referred to as petitioner. The petitioners filed joint Federal income tax returns for the years 1966 and 1967 with the district director of internal revenue in Cleveland, Ohio.

Petitioner, during the calendar years 1966 and 1967, was employed by Gregory Industries, Inc., a Michigan corporation (hereinafter referred to as the corporation), as a vice president. He was also a member of the board of directors of the corporation.

During 1966 and 1967, petitioner, in his capacity as vice president, was covered under a group-term life insurance plan for employees provided by the corporation. Petitioner's coverage under this plan was $75,000, for which petitioner paid $468 in each of the calendar

years 1966 and 1967 for $65,000 of coverage, with the corporation providing the remaining $10,000 coverage.

In addition to the above insurance, the corporation provided a separate group-term life insurance plan under which it provided coverage on the life of each member of its board of directors, including the petitioner, in the amount of $25,000. Each director had the right to, and did, designate the beneficiary under this insurance coverage. The corporation was not the beneficiary of the petitioner's insurance coverage. The corporation paid the entire premium relating to this coverage on the life of petitioner in the amount of $629.75 for the calendar year 1966 and the amount of $680.75 for the calendar year 1967.

During the calendar years 1966 and 1967, no group-term life insurance on the life of petitioner was paid for by anyone or any entity other than the petitioner and the corporation, and the petitioner had no group-term life insurance other than the coverage stated above.

Petitioner did not include in income the amounts of $629.75 for 1966 and $680.75 for 1967 paid by the corporation for the group-term life insurance premiums on coverage of petitioner provided for him in his capacity as a director of the corporation.

In his notice of deficiency, the respondent determined that the purchase by the corporation of the group-term life insurance for petitioner in his capacity as a director of the corporation was, to the extent of the premiums paid for such coverage, in payment for petitioner's services as a director of the corporation and increased petitioner's gross income for 1966 and 1967 by the insurance premiums paid, respectively, for that coverage.

The ultimate issue in this case is whether or not the group-term life insurance premiums paid by the corporation for the petitioner in his capacity as a director constitutes taxable income to the petitioner. The petitioner makes two major arguments against such taxability. First, he asserts that such premiums are within the scope of section 79, I.R.C. 1954, which excludes certain group-term life insurance premiums from income.[1] Second, even assuming that the exclusionary

---

[1] SEC. 79. GROUP-TERM LIFE INSURANCE PURCHASED FOR EMPLOYEES.

(a) GENERAL RULE.—There shall be included in the gross income of an employee for the taxable year an amount equal to the cost of group-term life insurance on his life provided for part or all of such year under a policy (or policies) carried directly or indirectly by his employer (or employers) ; but only to the extent that such cost exceeds the sum of—

(1) the cost of $50,000 of such insurance, and

(2) the amount (if any) paid by the employee toward the purchase of such insurance. * * *

Secs. 79(b) and 79(c) are inapplicable to this case.

All Code section references hereinafter cited are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

rule of section 79 might not apply, the petitioner asserts that the premiums do not constitute income within the meaning of section 61(a) (1).[2] The threshold question is therefore for us to determine if section 79 disposes of the issue by excluding such premiums from petitioner's income.

Generally, section 79 expressly includes in an employee's gross income the cost of group-term life insurance coverage provided him by his employer, but only to the extent such cost exceeds the cost of $50,000 of such insurance and the amount paid by the employee toward the purchase of such insurance. The cost of group-term life insurance coverage below $50,000 provided an employee by his employer is excluded from the employee's gross income.

Petitioner's argument asserts that notwithstanding that the insurance coverage in question is provided the petitioner in his capacity as a director, the fact that he is also an employee qualifies him for the section 79 exclusion as to that insurance. However, in order for section 79 to apply, it is clear that the insurance coverage must be provided pursuant to a plan arranged by an employer for an employee. This is specifically recognized by respondent's regulations:

> To constitute a plan of group insurance, the plan must be arranged for by an employer for his employees. [Sec. 1.79-1(b)(1)(iii)(a), Income Tax Regs.]

The plan must be pursuant to the employment relationship, and eligibility must be based primarily thereon:

> To constitute a plan of group insurance, the plan must make term life insurance available to a group of lives. Such group must include all of the employees of the employer, or, subject to the provisions of (d) of this subdivision, a class or classes of such employees the members of which are determined on the basis of factors which preclude individual selection. Examples of such factors are membership in a union whose members are employed by the employer, marital status, and age. A plan under which insurance is available only to employees who own stock in the employer corporation does *not qualify as a plan of group insurance for purposes of section 79 since eligibility is not based primarily on the employment relationship*. Furthermore, the coverage under the plan of the employer must in operation conform to the provisions relating to the eligibility of employees which are incorporated therein. [Emphasis added. Sec. 1.79-1(b)(1)(iii)(b), Income Tax Regs.]

If there is more than one capacity that the "employee" occupies, the regulations specify that we must look to the one for which the coverage is provided in order to determine if that capacity satisfies the employment relationship test:

> Thus, for example, if an individual had performed services for the employer as a "common-law" employee and such individual is currently performing serv-

---

[2] SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items; * * *

ices for the same employer as an independent contractor, the determination of whether the individual is an employee as defined in this subparagraph depends upon whether, under the terms of the plan for providing group-term life insurance protection, on such individual's life, such individual's coverage is based upon his former services as an "employee" or upon his current services as a self-employed individual. [Sec. 1.79–1(b) (2) (i), Income Tax Regs.]

These regulations require that the section 79 insurance coverage must be provided for the employee pursuant to the employment relationship, *notwithstanding* the fact that the employee may also stand in another relationship with the employer. Thus, even though the petitioner is an employee in addition to being a director, the insurance coverage must be based on that employment status rather than on his concurrent directorship status. Since the petitioner's insurance plan at issue is focused on his capacity as a director, petitioner's only claim under section 79 is that his directorship status is the equivalent of an employment status.

The employment relationship required under section 79 and the regulations does not seem to be satisfied by the plan that covered petitioner solely in his capacity as a director. The regulations clearly point out that a director, in his capacity as such, is not an employee.

The term "employee" has reference to the legal and bona fide relationship of employer and employee. For rules applicable to the determination of whether the employer-employee relationship exists, see section 3401(c) and the regulations thereunder. [Sec. 1.79–1(b) (2) (i), Income Tax Regs.]

The regulations under section 3401(c) specifically provide as follows:

All classes or grades of employees are included within the relationship of employer and employee. Thus, superintendents, managers, and other supervisory personnel are employees. Generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is not considered to be an employee of the corporation. *A director of a corporation in his capacity as such is not an employee of the corporation.* [Emphasis added. Sec. 31.3401(c)–1(f), Employment Tax Regs.]

Petitioner relies on *Edward P. Clay*, 46 T.C. 505 (1966), for his arguments (1) that existence of the employment relationship cannot be obscured by the fact that the employee was also (in that case) an owner of the corporate employer and (2) that payment by the employer of premiums for group-term life insurance on the employee's life permitted exclusion of the premiums from the employee's income irrespective of the fact that only a certain category of employees was eligible for coverage. In that case Ford Motor Co. provided a group-term life insurance plan in which employee-owners of dealerships were

to be covered, the premiums to be paid by the corporate dealerships with which the employee-owners were associated.

However, those issues are not present in this case, and their resolution has no bearing on our problem. *Edward P. Clay, supra,* held that the fact that the taxpayer employee was also an owner of the corporate employer would not in itself obscure the fact that he was covered under the group-term life insurance plan as an employee. The factual question in that case was to determine the capacity in which the taxpayer was covered by the plan—as an employee or as an owner—and the factual determination was that he was covered as an employee. In the instant case the parties have stipulated that the coverage of the petitioner in question was in his capacity as a director and not as an employee. Thus, *Clay* is inapposite and not controlling here.[3]

The section 79 exclusion was designed to encourage provisions by employers for families when they lost the employee-breadwinner in his role as a breadwinner. The legislative history discussing congressional intent reflects this as follows:

It is desirable to encourage employers to provide life insurance protection for their employees. Provision of such a basic amount of insurance does much to keep together family units where the principal breadwinner dies prematurely. [H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 164. See also S. Rept. No. 830, 88th Cong., 2d Sess., 1964–1 C.B. (Part 2) 550.]

This legislative policy does not encompass the concept of a corporate director. The director of a corporation is not generally regarded as performing a "breadwinning" function, nor is the directorship of a corporation considered as a primary source of support for the maintenance of a family. In the instant case, for example, petitioner's salary from his corporate employer exceeded $45,000 in each year but he reported no income from his directorship with that corporation. His employer's furnishing him with $25,000 of separate insurance coverage because of his services as a member of its board of directors was obviously not the sort of employee insurance protection contemplated by section 79.

It is therefore apparent and we conclude here that the exclusion of a director, in his capacity as such, from the regulations' definition of an employee within the meaning of section 79 does not violate the spirit nor the policy of that section and represents a reasonable interpretation thereof. It must be upheld. *Commissioner* v. *South Texas Lumber Co.,* 333 U.S. 496, 501 (1948).

On the facts before us we must conclude and find that the insurance plan in issue was provided pursuant to a plan for directors, not a

---

[3] *Edward P. Clay,* 46 T.C. 505 (1966), involved the years 1960 and 1961 and the then existing regulations under sec. 61(a). Sec. 79, with which we are here concerned, was subsequently enacted.

plan for employees as required by the regulations, and is not covered by section 79. The fact that the petitioner was also covered by a separate, additional group-term life insurance plan for employees in his capacity as an employee (a plan not contested by the respondent) delineates more clearly the fact that the plan at issue was not designed or provided to cover the petitioner as an employee but rather solely as a director. Here petitioner's sole compensation for serving as a director of the employing corporation was the cost of insurance provided for him as a corporate director. This further emphasizes that it was not at all group-term life insurance provided by an employer for an employee.

Since the petitioner cannot claim an exclusion under section 79, the determination as to whether the provision of the cost of petitioner's group-term life insurance director's coverage constitutes income is to be made under section 61.[4]

Petitioner's second principal argument, then, is that the premiums paid in this case with respect to the petitioner's service as a director do not constitute income within the meaning of section 61.

As a general rule, there is included in income all amounts received as compensation for services. Sec. 61(a)(1); sec. 1.61–2, Income Tax Regs. This includes not only actual salary received but also compensation paid other than in cash. Sec. 1.61–2(d), Income Tax Regs.

Petitioner contends that because there has long been an administrative exception to this broad rule of compensatory benefits with respect to the benefit received by an employee where his employer provided group-term life insurance coverage for him, we should extend that concept to this case.[5] This we are unable to do.

The general rule that life insurance protection, as a device to provide additional compensation, is taxable to the employee to the extent of premiums paid by his employer continued as a viable concept outside the limited scope of the Commissioner's administrative actions. See *Yuengling* v. *Commissioner*, 69 F. 2d 971 (C.A. 3, 1934); *Commissioner* v. *Bonwit*, 87 F. 2d 764 (C.A. 2, 1937); *George Matthew*

---

[4] The regulations, see, 1.79–1(a)(3), provide as follows:

If the proceeds of a policy of group-term life insurance on the life of an individual are payable to such individual or his beneficiary, and if the provisions of subparagraph (1) or (2) of this paragraph do not apply to such policy, then the determination of whether an amount is includible in the individual's gross income is made with regard to the provisions of section 61(a) and the regulations thereunder. For example, if group-term life insurance is provided on the life of the employee's spouse, or is not provided as compensation for personal services rendered as an employee, or is not provided under a policy carried directly or indirectly by the employee's employer, then subparagraphs (1) and (2) of this paragraph do not apply and the tax treatment shall be determined under section 61(a) and the regulations thereunder.

[5] L.O. 1014, 2 C.B. 88 (1920); T.D. 2992, 2 C.B. 76 (1920), amending art. 33, Reg. 45, under sec. 213(a), art. 33, Revenue Act of 1916; continued in effect in the regulations until 1966 in sec. 1.61–2(d)(2).

*Adams*, 18 B.T.A. 381 (1929); *N. Loring Danforth*, 18 B.T.A. 1221 (1930).

Notwithstanding the administrative position developed by the Treasury pursuant to L.O. 1014, cited in fn. 5, *infra*, and the subsequent regulations, there was no support in the Code itself for such an exclusion. Apparently, this position was grounded on no singular idea, but rather on the Treasury's view of a combination of factors such as encouragement of the socially desirable group protection of a decedent employee's family, the feeling that the benefit received from non-cash surrender life insurance protection was somehow remote, and the fact that such protection was not usually very extensive or expensive.

It was this administrative determination, rather than a statutory rule of exclusion, that gave employee group-term life insurance premiums a favored position by not taxing, for administrative reasons, compensation that was otherwise within the scope of taxable income under the Code.[6]

At the time section 79 was being enacted, Congress recognized that the previously allowed exclusion was administrative only, see H. Rept. No. 477, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 277, and that the cost of employee group-term life insurance was definitely considered within the statutory scope of taxable compensation:

> Despite the fact that the entire cost of this insurance protection *represents compensation to the employee,* your committee has provided an exemption [of $50,000] * * * [Emphasis added. H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 164. S. Rept. No. 830, 88th Cong., 2d Sess., 1964–1 C.B. (Part 2) 550.]

That the prior administrative exclusion was not based on statute but rather on the Commissioner's regulations was recognized and pointed out in *Edward P. Clay, supra* at 510, as follows:

> Respondent asserts and petitioner does not contest that the premiums here paid by Leavenworth Motor, Inc. (and possibly in small part by Ford Motor Co.), during the years in issue would be fully taxable to petitioner were it not for section 1.61–2(d)(2), Income Tax Regs., *supra.* * * *

---

[6] Commentators on this subject have indicated in what context the rule of exclusion should be viewed, as then in effect:

"By a special Treasury Department ruling, an employee is not taxable on premiums paid by the employer for group term insurance on the lives of his employees. It should be noted that *no basis exists in the Code for the Treasury's position that premiums for group term insurance are not income to the insured employee.* Although current insurance protection would seem to constitute income, the Treasury has apparently made the administrative decision that such coverage, if afforded by a group policy, should be receivable tax-free. [Footnote omitted. Harnett, Taxation of Life Insurance 258–259 (P–H., Inc., 1957).]

"The 1920 ruling on group term insurance was based on grounds that *may not square with income tax principles evolved over the years,* but this ruling, with its implicit rejection of tax on *de minimis* individual benefits, today has the sanction of Treasury Regulation * * * [Emphasis added. 1 Washington & Rothschild, Compensating the Corporate Executive 199 (Roland Press Co. 1962).]

The petitioner argues that group-term life insurance protection of directors falls within this prior administrative exclusion since directors were never specifically excluded from the meaning of "employees" in the old regulations. We must reject that argument as not supported either by logic or any persuasive authority. Even if we were convinced that the prior regulations should be applied here, which we are not, we are not persuaded that the premiums paid for the insurance of petitioner, as a director, would be thereby excluded from his income. For many of the same reasons given with respect to the application of section 79 to the facts before us, the earlier administrative exclusion under L.O. 1014, *supra*, and the prior regulations, is not available to assist petitioner here.

In enacting section 79, Congress did not "create" income, as is asserted by the petitioner, with respect to employee group-term life insurance coverage premiums providing in excess of $50,000 protection. Congress in effect revoked the prior administrative exclusion of this type of compensation beyond the cost of $50,000 of protection, while at the same time providing a precise statutory exclusion for such cost, up to that amount. Congress was only putting this type of compensation back where it should have been, into taxable income under section 61, while providing the limited exclusion for certain socially desirable policy reasons with respect to employees.

Both the prior administrative exclusion, beginning with L.O. 1014, *supra*, and the section 79 statutory provision limiting such exclusion were founded and based upon a policy of encouraging low-cost family insurance protection for employees within definite limits, rather than on any notion that such benefits are not really income at all. Thus, the congressional attitude toward this area of group-term life insurance and the statutory implementation of that attitude preempted any prior administrative practices with respect thereto. Again, the careful use of the new statutory exclusion as being restricted to employees as defined by the regulations, and supported in the legislative history, reflects the congressional theory of providing for the loss of an "employee-breadwinner." Unless excluded by this congressional enactment, all other variations from employee group-term life insurance are to be treated for what they are—compensation within the meaning of section 61.

Petitioner asserts that since L.O. 1014 was not specifically ruled obsolete until 1969 by Rev. Rul. 69–31, 1969–1 C.B. 308, it must have been the Commissioner's position that its effect remained viable until that time. However, the periodic determination that certain rulings are obsolete does not necessarily mean that, until such a review indicates the obsolescence of a ruling, the ruling represents the controlling view of authority until that time. Indeed, the announcements by the

Commissioner do *not* say the obsolete rulings necessarily *are* applicable to immediately prior transactions; rather the announcements are indicated specifically as *not* for the purpose of determining applicability. This is to dispel notions that a determination of obsolescence means that the ruling was effective immediately prior to such determination:

The purpose of this declaration of obsoleteness is to make it clear to all concerned that the above-listed rulings are not determinative with respect to future transactions. *It is not the purpose of this Revenue Ruling to determine the applicability of any of the listed rulings to past transactions.* [Emphasis added. Rev. Rul. 69–31, *supra* at 310.]

The fact that the section 61 regulations, stating the old Treasury position, were not amended in deference to section 79 until 1966 does not indicate that they continued to be determinative after the enactment of section 79, or thereafter in 1966 and 1967, the years in issue. Since section 79 preempted the issue, the old regulations were subsequently of no effect. The regulatory changes in 1966 to cross reference into section 79 merely followed what was necessary to bring the preempted section 61 regulations into line with section 79. The relationship of section 79 and section 61 is indicated by the limited cross-reference under section 1.61–2(d)(2)(ii)(a), Income Tax Regs., to the effect that in the particular case of employee group-term life insurance, the treatment is to be determined under section 79. Looking at section 1.79–1(a)(3), Income Tax Regs., the rule is that if the particular coverage at issue is not within the limited scope of section 79 exclusion, the determination of inclusion in gross income shall be made with reference to section 61 and its regulations, a determination that indicates taxable compensation in this case. This follows the express intent of Congress to limit section 79 and let other insurance situations stand without the benefit of section 79:

The new section 79 does not affect the tax treatment of other types of insurance (such as group permanent life insurance) provided for employees by their employers, or the tax treatment of group-term life insurance provided for individuals (such as independent contractors and partners) who are not employees. [H. Rept. No. 744, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 278.]

The conclusion is inescapable that the premiums paid by the corporation for group-term life insurance for the petitioner in his capacity as a director constitute compensation and taxable income to the petitioner in the years before us, 1966 and 1967. Such premiums are not within the exclusion of section 79, or the applicable regulations thereunder. Petitioner points to no other exclusionary rule, regulation, or practice that might operate to treat them as anything other than taxable compensation under section 61.

*Decision will be entered for the respondent.*