Whipple Chrysler-Plymouth v. Commissioner. Elmer E. Whipple, Jr. and Viola E. Whipple v. Commissioner.
Whipple Chrysler-Plymouth v. Commissioner
Docket Nos. 6267-69, 6268-69.
United States Tax Court
T.C. Memo 1972-55; 1972 Tax Ct. Memo LEXIS 201; 31 T.C.M. (CCH) 230; T.C.M. (RIA) 72055; February 28, 1972, Filed Robert D. Silver, 21 S. California St., Ventura, Calif., for the petitioners. J. Earl
RAUM BAUM Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioners' income tax as follows: Petitioner
Docket Number
Year
Defi- ciency
Whipple Chrysler- Plymouth
6267-69
1966
$ 501.64
1967
448.07
Elmer E. Whipple, Jr. & Viola E. Whipple
6268-69
1966
1,292.20
1967
1,103.84
At issue is the correctness of the Commissioner's action in (1) disallowing deductions to the corporate *202 petitioner and including in the gross income of the individual petitioners (husband and wife) certain amounts relating to the individuals' use of automobiles owned by the corporation; (2) disallowing deductions of portions of certain amounts claimed by the corporation as travel and entertainment expenses and treating such amounts as constructive dividends to the husband; and (3) disallowing the corporation's deduction of insurance premiums paid on the life of the husband and treating such amounts as constructive dividends to him. Findings of Fact The parties have filed a stipulation of facts which, together with accompanying exhibits, is incorporated herein by this reference. Petitioners Elmer E. Whipple, Jr. ("Elmer") and Viola E. Whipple ("Viola"), husband and wife, resided in Ventura, 231 California, at the time their petition herein was filed. Their joint Federal income tax returns for the calendar years 1966 and 1967 were prepared on the cash basis and filed with the district director of internal revenue at Los Angeles, California. Petitioner Whipple Chrysler-Plymouth ("the corporation") is a California corporation. Its Federal corporation income tax returns for the *203 calendar years 1966 and 1967 were prepared on the accrual basis and filed with the district director of internal revenue at Los Angeles, California. At the time its petition herein was filed, the corporation's principal office was in Ventura, California. During 1966 and 1967 it engaged in the business of selling new Chrysler-Plymouth products and used car products of various types and descriptions. At all relevant times Elmer was president, general manager, a member of the board of directors, and a 50-percent shareholder of the corporation. He drew a salary of $12,600 per year as president. His father, Elmer Whipple, Sr., who was not active in the business, owned the remaining 50 percent of the stock in Whipple Chrysler-Plymouth. Viola was the uncompensated vice-president of the corporation; her only function was to sign the minute books. 1. Use of corporate automobiles. Whipple Chrysler-Plymouth provided its new car salesmen and automobile sales managers with the free use of new automobiles. These "demonstrators" were generally driven by such persons for several months and then returned to the corporation to be sold. In keeping with this practice Elmer had the use of a Chrysler *204 Imperial that was replaced at least several times a year with a new model during 1966 and 1967. This practice was prevalent among automobile dealers in the Ventura area. Viola was also furnished with a free demonstrator, a fully equipped Plymouth (including air conditioning), which was similarly replaced periodically during 1966 and 1967 with a new model. Both cars assigned to the Whipples were garaged at their home. Viola used her car solely for personal purposes. Although Elmer used his car primarily for business purposes, he also used it for commuting and other personal purposes. While these cars were thus being used by the Whipples, the corporation incurred some of the customary expenses of their operation and maintenance, such as the cost of gasoline and oil. The corporation claimed as deductions in its returns for 1966 and 1967 the amounts of $5,897 and $2,832, respectively, to cover expenses incurred in the maintenance of all its demonstrators, including the cars used by the Whipples. The Commissioner determined that $260 in each of those years was applicable to the maintenance expenses paid by the corporation in respect of Viola's car, and he disallowed the claimed deduction *205 in each year to the extent of $260. Concomitantly, he increased the taxable income to the individual petitioners by $260 in each of the tax years as a constructive dividend. Further, the Commissioner determined that the fair rental value of Viola's car (which he erroneously characterized as a "Chrysler Imperial") was $960 a year and he ruled that such amount constituted a constructive dividend to be included in the gross income of the individual petitioners. Finally, in respect of Elmer's car, the Commissioner determined that the portion of the fair rental value and maintenance expenditures attributable to personal use was $450 a year ($240 rental value plus $210 maintenance), and he included that amount in the individual petitioners' gross income for 1966 and 1967 as additional compensation to Elmer. [1]
*206 2. Travel and Entertainment. In its returns for 1966 and 1967 the corporation claimed deductions for travel and entertainment in the amounts of $2,768 and $2,671, respectively. The Commissioner disallowed these deductions to the extent of $1,684 for 1966 and $1,547 for 1967. The amounts disallowed represented withdrawals made by Elmer from time to time from the corporation's petty cash. The record does not disclose the extent to which, if any, the aggregate amounts actually withdrawn during each year exceeded the amounts disallowed. When he made such cash withdrawals Elmer would place the money in his wallet and would use the commingled funds for personal purposes as well as to defray the cost of such alleged businessrelated items as lunches with employees and gasoline and lunches purchased in connection with buying excursions to Los Angeles, some 75 or 80 miles from Ventura. The record contains no documentation of any 232 such alleged business expenditures, nor any evidence as to the amount of such alleged expenditures, nor any details establishing the business nature of the alleged expenditures apart from Elmer's general and conclusory testimony. Nor does the record show that, *207 if any such expenditures were deductible, they were not already included in those portions of the claimed deductions for travel and entertainment expenses which the Commissioner allowed. Concomitantly with the Commissioner's disallowance of the corporation's deductions to the extent of $1,684 and $1,547 for 1966 and 1967, respectively, he treated those amounts as constructive dividends to Elmer and increased the gross income of the individual petitioners accordingly. 3. Life Insurance. During the years 1966 and 1967, Elmer's life was insured in the amount of $5,000 under a group life insurance policy issued by the Prudential Insurance Company to Chrysler Motors Corporation. Viola was the beneficiary, but Elmer had the right to change the beneficiary without her consent. The policy was issued pursuant to a plan of Chrysler Motors Corporation that covered only those who could qualify as an "Owner" of a Chrysler Dealership. The term "Owner" was defined to mean either a sole proprietor or the owner of at least a 20 percent interest in a partnership or incorporated Dealership, who was actively engaged in the operation of the Dealership. Thus, apart from Elmer no Whipple Chrysler-Plymouth *208 employee was eligible for insurance under the Chrysler Plan and none was in fact included thereunder. The premiums with respect to the foregoing insurance on Elmer's life amounted to $338 a year, and during each of the years involved, 1966 and 1967, such premiums were paid by Whipple Chrysler-Plymouth. Wholly apart from Elmer's life insurance under the Chrysler Plan, Whipple Chrysler-Plymouth maintained a group insurance policy with the Ventura County Motor Car Dealers Insurance Trust Fund on behalf of its employees, some 18 or 20 in number during the years 1966 and 1967. However, the record is not clear to what extent the premiums paid thereunder related to medical insurance rather than to life insurance. Elmer was included among the employees covered by this policy and the premiums relating to him were $29.55 a month. The Commissioner did not make any adjustments in respect of the premiums paid under the group policy maintained by the corporate petitioner for its employees, including Elmer. But he did disallow the deduction of $338 paid by the corporate petitioner in each of the years 1966 and 1967 in respect of Elmer's life insurance under the Chrysler Plan, and treated that *209 amount as a constructive dividend to Elmer in each of the years, which he accordingly included in the gross income of the individual petitioners. Opinion RAUM, Judge: 1. Use of corporate automobiles. It has become firmly established that where corporate property is used by a stockholder or a member of his family for personal purposes, not proximately related to the corporate business, the corporation is not entitled to deductions to the extent that they relate to such personal use, and the fair "rental" value of such property is includable in the stockholder's income. The decisions to this effect are too numerous for useful cataloguing, but the following are representative: Commissioner v. Riss, 374 F. 2d 161, 166-167, 170 (C.A. 8), affirming a Memorandum Opinion of this Court on this issue but reversing and remanding on other issues; Motel Company v. Commissioner, 340 F. 2d 445, 448-449 (C.A. 2), affirming a Memorandum Opinion of this Court; United Aniline Company v. Commissioner, 316 F. 2d 701, 704-705 (C.A. 1), affirming a Memorandum Opinion *210 of this Court [Dec.]; Gordon S. Dole, 43 T.C. 697, 707, affirmed per curiam 351 F. 2d 308 (C.A. 1); Estate of William F. Runnels, 54 T.C. 762, 767; Challenge Manufacturing Co., 37 T.C. 650, 659, 663; Rodgers Dairy Co., 14 T.C. 66, 73-74. [2] These principles are applicable in this case. (a) Viola's automobile. We are unconvinced by the petitioners' efforts to eatsblish that Viola's free use of fully equipped Plymouths owned by the corporation for her exclusive personal needs was proximately related to the conduct of its 233 business. The petitioners maintain that Whipple Chrysler-Plymouth benefited from the exposure of Viola's cars in the community and from her advice to Elmer as to the performance of her cars. Taking note of the facts that *211 Viola used her cars exclusively for her own purposes, wholly unrelated to those of the corporation, and that her cars were garaged nightly at the Whipples' residence, we think that any benefits to the corporation were negligible in comparison to the boon to Viola of having a free automobile at her constant disposal. Nor do we think that it is a matter of consequence that the Commissioner erroneously described her car as a "Chrysler Imperial". The point is that she had a new fully equipped Plymouth at all times, and there is no evidence whatever in the record to show that its fair rental value was less than $960 a year, as determined by the Commissioner. That amount is therefore properly includable in the income of the individual petitioners. Similarly, the $260 expended by the corporation during each year for the maintenance of Viola's car [3] represents income to them, and is not deductible by the corporation since it is properly classifiable as a constructive dividend. See, e.g., Challenge Manufacturing Co., supra, 37 T.C. at 663. *212 (b) Elmer's automobile. What we have said above in regard to Viola's car applies equally to Elmer's car in respect of including in his gross income the fair rental value of his car plus expenses relating thereto paid by the corporation to the extent that it reflects his personal use. Such an allocation is entirely appropriate. See, e.g., Commissioner v. Riss, supra, 374 F. 2d at 170; Motel Company v. Commissioner, supra, 340 F. 2d at 448-449. And the record herein contains no evidence whatever to show that the particular allocation made by the Commissioner was in error. Finally, as noted in our findings, supra, fn. 1, p. -, no issue is here presented as to any deduction by the corporation, since the Commissioner regarded the benefits received by Elmer as additional compensation, rather than dividends, consistently with the treatment accorded to like benefits received by other employees who were also given "demonstrators" for their personal and official use. 2. Travel and entertainment - petty cash withdrawals. Elmer testified generally that he placed petty cash withdrawn from the corporation in his wallet, and used the commingled funds to pay for items *213 related to the business of the corporation as well as for personal items. However, there has been a failure of proof not only as to the amount of the claimed business expenditures, but also as to whether they were in fact proximately related to the business of the corporation. Thus the reference to "lunches" in Elmer's testimony may well have included his own lunches, which, of course, are not deductible, cf. Richard A. Sutter, 21 T.C. 170, and the testimony as to lunches that may have been purchased for others was entirely too general to establish that they represented business expenses of the corporation. Furthermore, even if some of the expenses were deductible, we are unable to find on the record before us that they were not reflected in the portions of the deductions for "Travel and entertainment" expenses which the Commissioner allowed. And finally, there has been a complete failure to comply with the susbtantiation requirements of section 274(d) of the Code. Cf. William F. Sanford, 50 T.C. 823, affirmed 412 F. 2d 201 (C.A. 2), certiorari denied 396 U.S. 841. On this state of the record we must approve the Commissioner's *214 determination in respect of the disallowance of the deductions to the corporation, and must likewise sustain his treatment of the amounts involved as constructive dividends to Elmer. Cf. John L. Ashby, 50 T.C. 409, 417-418; Challenge Manufacturing Co., supra, 37 T.C. at 661, 663. 3. Insurance premiums. Petitioners, relying upon Edward P. Clay, 46 T.C. 505, argue that the $338 insurance premiums paid annually by the corporation in respect of Elmer's life insurance may not be treated as constructive dividends. The Clay case was decided upon the basis of certain administrative rulings that were not based upon any specific statutory provisions. After the tax year involved in the Clay case, Congress amended the statute in sec. 204 of the Revenue Act of 1964, P.L. 88-272, by adding section 79 to the Internal Revenue Code of 1954, [4] and subsequent 234 thereto an entirely new and comprehensive set of regulations dealing with this subject was promulgated. The effect and scope of the new statutory provisions and regulations were considered at length in Maurice A. Enright, 56 T.C. 1261, which we regard as controlling *215 here. The Chrysler Plan under which the insurance was issued was open only to those who qualified as an "Owner" of a Dealership, and not to employees generally. Thus, of all employees of his corporation Elmer alone was eligible for life insurance under that plan, and such insurance could not satisfy the requirement of section 79 relating to a group policy carried directly or indirectly by his employer. Elmer's employer, the corporate petitioner, carried no such group policy, directly or indirectly. He was the only employee covered. *216 Moreover, there is no evidence whatever to support petitioners' argument that the insurance under the Chrysler Plan must be considered together with the local group insurance policy carried by the corporation for its employees generally (including Elmer) to form a single plan. That other insurance was entirely separate and its precise nature is not even adequately disclosed by the record. We have no convincing evidence upon which to base a finding that Whipple Chrysler-Plymouth had a unified insurance plan which comprehended Elmer's insurance under the Chrysler Plan. To the contrary, Elmer along with the other employees was covered by the other policy maintained by his corporation for its employees, and the inference is strong that the policy under the Chrysler Plan was something separate and apart. We think that the principles approved and applied in Maurice A. Enright, supra, 56 T.C. 1261, are controlling here. The $338 insurance premiums paid by the corporation are taxable as income to the individual petitioners and are not deductible by the corporation since they are constructive dividends. In regard to each of the Commissioner's determinations against the individual *217 petitioners, with the exception of his determination in respect of the automobiles furnished to Elmer, the petitioners assert that any income attributed to Elmer should be regarded as additional compensation rather than dividends. In view of the fact that Whipple Chrysler-Plymouth was a family-owned corporation, completely controlled by Elmer, this contention invites careful scrutiny. We think that the petitioners have belatedly recharacterized as "compensation" the various benefits which the corporation conferred upon the Whipples in order to preserve the corporation's deductions. The record herein is devoid of any proof that such benefits were intended as compensation. Without such proof, the petitioners' argument is without merit. See Motel Company v. Commissioner, supra, 340 F. 2d at 448-449; Electric & Neon, Inc., 56 T.C. 1324, 1340; Challenge Manufacturing Co., supra, 37 T.C. at 663; J. J. Kirk, Inc., 34 T.C. 130, 139-140, affirmed 289 F. 2d 935 (C.A. 6); Arthur R. Womrath, Inc., 22 B.T.A. 335, 336; [5] cf. Samuel Levine, 50 T.C. 422, 426-427. *218 Decisions will be entered for the respondent. Footnotes
1. Since demonstrators were furnished to other employees of the corporation, the Commissioner apparently concluded that the entire cost of maintenance was deductible by the corporation as additional compensation, and consequently treated the $450 portion of the amount allocable to Elmer's personal use of his car as additional compensation to him rather than as a constructive dividend.↩
2. Petitioners have relied primarily on Lang Chevrolet Co. 26 T.C.M. 1054↩. Whatever may be thought of that case in the light of the well established line of authoritative decisions cited above, it must be regarded as turning on the particular facts of record therein. We consider the principles applied in the foregoing cases to be controlling here.
3. Petitioners have produced no evidence to show that the Commissioner erred in determining that such expenditures amounted to $260 a year. That figure appears reasonable to us, and taking into account the state of the record we must accept it as correct.↩
4. SEC. 79. GROUP-TERM LIFE INSURANCE PURCHASED FOR EMPLOYEES. (a) General Rule. - There shall be included in the gross income of an employee for the taxable year an amount equal to the cost of group-term life insurance on his life provided for part or all of such year under a policy (or policies) carried directly or indirectly by his employer (or employers); but only to the extent that such cost exceeds the sum of - (1) the cost of $50,000 of such insurance, and (2) the amount (if any) paid by the employee toward the purchase of such insurance.↩
5. See also Annabelle Candy Co., Inc., 20 T.C.M. 873, 876, affirmed on another issue, 314 F. 2d 1, 8 (C.A. 9); C. F. Smith Co., 13 T.C.M. 607, 613; Hubert Transfer and Storage Co., 7 T.C.M. 171, 172. The factual determination in Edward P. Clay, supra, 46 T.C. at 510↩, that premium payments to the insured employees rests upon the facts of record in that case and is not determinative here.